NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

In re the Marriage of:

LYNN MARIE JUENGER, *Petitioner/Appellee,*

*v.*

GERALD J. NYAHAY, *Respondent/Appellant.*

No. 1 CA-CV 12-0751
FILED 4-29-2014

---

Appeal from the Superior Court in Mohave County
No. L8015DO201107389
The Honorable Julie S. Roth, Judge Pro Tempore

**AFFIRMED IN PART, REVERSED IN PART, REMANDED**

---

COUNSEL

Gerald J. Nyahay, Lake Havasu City
*Respondent/Appellant in Propria Persona*

Lynn M. Juenger, Lake Havasu City
*Petitioner/Appellee in Propria Persona*

------

## MEMORANDUM DECISION

Presiding Judge Maurice Portley delivered the decision of the Court, in which Judge John C. Gemmill and Judge Kent E. Cattani joined.

------

**P O R T L E Y**, Judge:

**¶1**　　　　Gerald J. Nyahay ("Husband") challenges the ruling in the divorce decree that he was not entitled to an equitable lien for community funds used to pay the mortgage on separate property belonging to Lynn Juenger ("Wife"), as well as other payments. Having considered his arguments, we reverse and remand the denial of an equitable lien because community funds were used to pay Wife's sole and separate mortgage, but otherwise affirm the rulings.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**　　　　Wife filed a petition for dissolution on November 3, 2011, after nearly eleven years of marriage. The parties filed their resolution statements and the matter proceeded to trial. After closing arguments, the court granted the petition for dissolution and divided the property and debt in an unsigned minute entry.

**¶3**　　　　Wife lodged a form of order for the court's signature and Husband filed an unsuccessful motion for a new trial. Husband also filed a document entitled, "response to divorce decree," and argued that he has an equitable interest in Wife's separate property, the marital home, and he hopes to prove it with additional evidence. The court filed the signed decree on September 26, 2012. Husband filed his notice of appeal twenty-nine days later.

### DISCUSSION

#### I.　　　Jurisdiction

**¶4**　　　　The first issue we address is whether we have jurisdiction over the appeal. We have an independent obligation to determine that we have jurisdiction over an appeal. *Catalina Foothills Unified Sch. Dist. No. 16 v. La Paloma Prop. Owners Ass'n*, 229 Ariz. 525, 528, ¶ 6, 278 P.3d 303, 306 (App. 2012).

¶5          Here, the court granted the dissolution and resolved the issues in an unsigned minute entry. After denying Husband's motion for new trial by minute entry, the court subsequently signed and filed a final decree. Twenty-nine days later Husband filed a notice of appeal to contest the "order made and entered in this action on the 15th day of October 2012." Our review of the record does not reveal that any order was entered on October 15. The last order entered was the signed decree on September 26, 2012.

¶6          A notice of appeal must include the name of the parties, the judgment being appealed and the court that issued the judgment. ARCAP 8(c). We generally construe a notice liberally so long as it is not misleading or prejudicial. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 350, ¶ 30, 972 P.2d 676, 683 (App. 1998) (citation omitted). A notice citing the wrong judgment date may be treated as a technical error, which would allow us to decide the case on the merits. *Hanen v. Willis*, 102 Ariz. 6, 9, 423 P.2d 95, 98 (1967).

¶7          Here, we find the notice of appeal was not misleading, nor did it create prejudice for Wife. *See id.* Although Husband listed the wrong date on the notice, he listed the correct date the judgment was signed on the civil appeals docketing statement. Wife has not challenged our jurisdiction, and she has addressed the substantive issues Husband raised on appeal. Consequently, we find that the wrong date on the notice of appeal was not misleading or prejudicial and that we have jurisdiction to address the issues raised on appeal pursuant to Arizona Revised Statutes ("A.R.S.") § 12-2101(A)(1).[1]

## II.     Standard of Review

¶8          Husband claims that the court erred by refusing to impose a community equitable lien on Wife's sole and separate property, the marital home, because community funds were used to pay Wife's mortgage during the marriage. We review the equitable distribution of property for an abuse of discretion. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4, 169 P.3d 111, 113 (App. 2007). Because the principal issue on appeal — whether Husband was entitled to an equitable lien — is a mixed question of law and fact, we review the issue de novo. *See Valento v. Valento*, 225 Ariz. 477, 481, ¶ 11, 240 P.3d 1239, 1243 (App. 2010); *see also Alta. Sec. Comm'n v. Ryckman*, 200 Ariz. 540, 543, ¶ 10, 30 P.3d 121, 124

---

[1] We cite to the current version of the statute absent material changes.

(App. 2001). We will affirm the court's factual findings unless clearly erroneous but will draw our own legal conclusions from those facts. *Id.*

### III. Equitable Lien Arising from Mortgage Payments

**¶9** We have long recognized the existence of an equitable lien when community funds[2] are used to pay the mortgage on separate property. *Drahos v. Rens*, 149 Ariz 248, 249-50, 717 P.2d 927, 928-29 (App. 1985). In *Barnet v. Jedynak*, we prescribed the following formula for valuing a community lien when the property increases in value during the marriage: $C + [C/B \times A]$; where A = appreciation in value during the marriage, B = value on the date of the marriage, and C = community contributions to the principle. 219 Ariz. 550, 555, ¶ 21, 200 P.3d 1047, 1052 (App. 2009).

**¶10** The following year, we concluded in *Valento* that a community lien should be recognized even if the property decreases in value during the marriage. 225 Ariz. at 481-83, ¶¶ 12-18, 240 P.3d at 1243-45. There, wife purchased a house before her marriage, but it became the marital home and community funds were used to pay the mortgage. *Id.* at 482-83, ¶ 17, 240 P.3d at 1244-45. Although we remanded the case after finding that the court had not properly valued the equitable lien and property at the time of the trial, *id.* at 482-83, ¶¶ 17-18, 240 P.3d at 1244-45, we noted that the value of the lien formula is determined as: $C - [C/B \times D]$; where D = depreciation in value of the property during the marriage, B = value on the date of marriage, and C = community contributions to principle or market value. *Id.* at 482, ¶ 16, 240 P.3d at 1244.

**¶11** Here, it is clear that Wife acquired the house before the marriage and that it remains her sole and separate property even though the couple lived there during the marriage. And, although we do not have a transcript of the court proceedings, the record reflects that the court admitted Husband's resolution statement as an exhibit, which indicated that community funds were used to pay the mortgage for the majority of the marriage. Because there was some relevant evidence that community funds were used to pay the mortgage of Wife's separate property, the court was required to impose an equitable lien on the

---

[2] There is a strong presumption that all funds acquired by spouses during marriage are presumed to be community funds. *Barr v. Petzhold*, 77 Ariz. 399, 409, 273 P.2d 161, 167 (1954); *see* A.R.S. § 25-211.

separate real property for the benefit of the community without regard to whether the property increased in value. *See id.* at ¶ 17; *Drahos*, 149 Ariz. at 249, 717 P.2d at 928. Accordingly, the determination that the community did not have an equitable interest in the house because Husband did not demonstrate an increase in the value of the house was error. *See Valento*, 225 Ariz. at 482-83, ¶¶ 14-17, 240 P.3d at 1244-45.

**¶12** Husband contends that the community contributed some $58,000 to pay Wife's mortgage during the marriage. The court on remand, however, will have to determine the community's equitable lien. First, the court will have to determine the extent that community funds were used to pay Wife's mortgage during the marriage. *See id.* at 482, ¶ 16, 240 P.3d at 1244. Second, the court will have to determine the value of the community's equitable lien using one of the formulas set forth in ¶¶ 9 and 10, *supra*.

## IV. Equitable Lien Arising from Home Improvements

**¶13** Husband also argues that the court erred by denying his request to impose a community equitable lien for community funds he spent on home improvements and maintenance on Wife's house. We disagree.

**¶14** Before one party can try to impose an equitable lien on real property for improvements funded by community monies, the party must show that the improvements increased the value of the property. *Tester v. Tester*, 123 Ariz. 41, 44, 597 P.2d 194, 197 (App. 1979).

**¶15** Here, even assuming that community funds were spent on maintenance, utilities, and improvement, there is no evidence in the record on appeal that any of the improvements increased the value of the house. Any community funds spent on utilities or regular maintenance were enjoyed by the parties during the marriage absent proof that the funds improved the value of the separate property. *Cf. id.* (noting that the claimant must show repairs increased the separate property's value to get reimbursed for the community's expenditure). Although Husband sought the opportunity after trial to meet his burden, he was required to do so during trial. Because Husband did not meet his burden to prove that the use of community funds for improvements increased the value of the house at the time of trial, the court did not abuse its discretion by denying his claim for an equitable lien.

### V.    Equitable Lien for Separate Funds

¶16        Husband also contends that he contributed his separate funds to pay for Wife's separate obligations and is entitled to an equitable lien.  He does not, however, direct us to the record where the issue was raised at trial or where the court resolved the issue.  *See* ARCAP 13(a)(5) (stating that arguments on appeal shall contain "citation to the authorities, statutes and parts of the record relied on"); *see also Baker v. Baker*, 183 Ariz. 70, 73, 900 P.2d 764, 767 (App. 1995).  And, to the extent that it was raised and resolved at trial, we presume that the trial transcripts, which were not filed, support the court's ruling. *Kohler v. Kohler,* 211 Ariz. 106, 108 n.1, 118 P.3d 621, 623 n.1 (App. 2005) (citing *Baker v. Baker*, 183 Ariz. at 73, 900 P.2d at 767).  Consequently, Husband has not established that the court abused its discretion by refusing to impose an equitable lien for any alleged sole and separate funds Husband may have used to pay any of Wife's sole and separate debts.

### VI.    Bias

¶17        Husband also wants a new judge on remand.  He contends that the judge was biased because she placed a priority on rushing through proceedings and did not allow for the fact that Husband was not familiar with the statutes, rules, case law, and court proceedings.  A party who decides to represent himself is entitled to no more consideration than if represented by counsel and is to be held to the same familiarity of the procedures, statutes, and rules as would be attributed to a lawyer. *Copper State Bank v. Saggio*, 139 Ariz. 438, 441, 679 P.2d 84, 87 (App. 1983).  As a result, any requirement by the court that the parties had to follow the rules, case law, statutes, and related items does not constitute bias.

¶18        Moreover, although Husband may not agree with the court's rulings, there is nothing in the record on appeal that demonstrates that the judge was personally biased against him.  In the absence of evidence in the record to the contrary, "a trial judge is presumed to be free of bias and prejudice." *State v. Ramsey*, 211 Ariz. 529, 541, ¶ 38, 124 P.3d 756, 768 (App. 2005) (quoting *State v. Hurley*, 197 Ariz. 400, 404, ¶ 24, 4 P.3d 455, 459 (App. 2000)) (internal quotation marks omitted).  Accordingly, Husband's claim of judicial bias fails.

**CONCLUSION**

¶19        Based on the foregoing, we reverse only the ruling denying Husband an equitable lien on Wife's separate property because community funds were used during the marriage to pay her mortgage, and remand for further proceedings consistent with this decision, but otherwise affirm the property divisions in the decree.



Ruth A. Willingham · Clerk of the Court
FILED: MJT